# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH TURNAGE, | : |
| Petitioner, | : |
| | : CIVIL NO. 3:08-CV-1662 |
| v. | : |
| | : (JUDGE VANASKIE) |
| WARDEN B.A. BLEDSOE | : |
| Respondent. | : |

## MEMORANDUM

### Background

On September 8, 2008, Joseph Turnage ("Petitioner") filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241[1] while incarcerated at the United States Penitentiary at Lewisburg, Pennsylvania (USP-Lewisburg).[2] On November 6, 2008, the government filed its response, and on November 21, 2008, Petitioner filed a traverse.

---

[1] For the convenience of the reader of this Memorandum opinion in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted. The Court accepts no responsibility for, and does not endorse, any product, organization, or content at any hyperlinked site, or at any site to which that site might be linked. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court. Citations to page numbers refer to the page number of the document on the CM/ECF electronic record.

[2] While this petition was pending, Petitioner was transferred to the United States Penitentiary at Tucson, Arizona. Petitioner's involuntary transfer out of this district does not defeat this court's jurisdiction. See Barden v. Keohane, 921 F.2d 476, 477 (3d Cir.1990) (retaining jurisdiction over habeas petitioner who had been involuntarily transferred to another federal prison outside the court's jurisdiction).

Petitioner, a District of Columbia offender serving a prison term of 20 to 100 years, challenges adverse parole decisions. Because the denial of parole is supported by a rational basis articulated in the pertinent written decisions, the habeas corpus petition will be denied.

**Background**

On August 1, 1984, Petitioner was sentenced by the District of Columbia Superior Court to a 100-year term of imprisonment, with a minimum term of 20 years, for Assault with Intent to Rape While Armed, Carrying a Dangerous Weapon, Rape While Armed, Assault with Intent to Commit Sodomy While Armed, Armed Robbery, and Assault with Intent to Commit Robbery While Armed. On May 19, 1998, following an initial parole eligibility hearing, the D.C. Board of Parole denied Petitioner parole, and scheduled reconsideration for parole in April 2000. This decision, which was outside the parole guidelines recommendation, was based on Petitioner's "need for programming to remain crime free in the community." (Dkt. Entry 1-2 at 19–20.)

On August 5, 1998, pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997, the United States Parole Commission ("Parole Commission") assumed jurisdiction over parole decisions for D.C. offenders, and the D.C. Board of Parole was abolished. Pub. L. No. 105-33, § 11231(a), 111 Stat. 712, 745 (1997) (codified as amended at D.C. Code § 24-131 (2001)). Consequently, the Parole Commission conducted Petitioner's second parole hearing. (See Dkt. Entry 1-2 at 22.) Although acknowledging that application of the 1987 D.C. Board of Parole guidelines indicated that Petitioner should be paroled at that

time, the Parole Commission concluded that the "aggravated nature of [the] offense behavior" (involving the repeated rape and sodomy of the victim) made Petitioner a "more serious risk than indicated by [his] point score."[3] (Id.)  The Parole Commission indicated that Petitioner would need to complete "the Breaking Barriers program and continue AA programming prior to further reconsideration of release." (Id.)  The Parole Commission additionally noted that "[a] psychological evaluation . . . shall be completed to address program needs in the community and the likelihood of similar type behavior." (Id.)

On July 9, 2001, after another rehearing, the Parole Commission denied parole and continued for a rehearing in April 2002.  (Id. at 23.)  The Parole Commission again found Petitioner's score indicated that parole should be granted but that a departure from the guidelines was nevertheless warranted because Petitioner was still "a more serious risk than indicated by [his] point score." (Id.)  The Parole Commission emphasized the "predatory criminal behavior" of Petitioner's offense in that he "raped and sodomized [his] victim at knifepoint, after stalking her on the city streets." (Id.)  The Parole Commission further noted that Petitioner admitted to the D.C. Board of Parole that he had sexually assaulted two other women, but then denied all three incidents. (Id.)  The Parole Commission concluded that Petitioner needed to complete the "Breaking Barriers Program and continue NA/AA

---

[3] Under the 1987 D.C. Parole Board guidelines, each prisoner is assigned a total point score, which then serves as a guide to determine whether an inmate should be paroled or held in prison for a rehearing.  See D.C. Mun. Regs. tit. 28, app. 2-2 (1987).

programming prior to further consideration of release."[4]  (Id.)

A rehearing was held the following year, and on June 3, 2002 the Parole Commission once again denied Petitioner release and continued for a rehearing in May 2004.  (Id. at 24.) Again, the Parole Commission found that a departure from the guidelines was warranted because Petitioner was "a more serious risk than indicated by [his] point score."  (Id.)  The Parole Commission noted that Petitioner committed multiple rapes; had not expressed remorse; was a violent sex offender; had a 1983 attempted rape conviction that the Parole Commission had not considered at his last hearing; and it was likely that he would engage in similar crimes if granted release.  (Id.)

On April 30, 2004, following another rehearing, the Parole Commission again denied Petitioner parole and continued for a rehearing in April 2005.  (Id. at 25.)  Once again finding a departure from the guidelines was warranted, the Parole Commission, in addition to noting that Petitioner had committed multiple rapes and had shown no remorse, stated that Petitioner had not participated in sex offender treatment or counseling programs.  (Id.)  The Parole Commission advised Petitioner to become involved in programs "that will demonstrate that [Petitioner] [is] no longer a sexual predator."  (Id.)  The Parole Commission also requested the Bureau of Prisons to provide "a current psychological/psychiatric report 90 days prior to the next

---

[4] Petitioner has submitted a "Certificate of Participation," indicating that as of March 11, 2002, he had successfully completed the "Breaking Barriers" Program.  (Dkt. Entry 1-2 at 47.)

scheduled hearing which specifically addresses the prisoner's propensity to commit sexual offenses, his mental health status and diagnosis and treatment needs in the community." (Id.)

On May 3, 2005, Petitioner was again denied parole and continued for a rehearing in March 2008. (Id. at 27.) The Parole Commission stated that although Petitioner had admitted to committing the offense and had expressed remorse, he had not participated in sex offender treatment or counseling programs. (Id.) The Parole Commission concluded that Petitioner "[had] little insight into the factors that led [him] to sexually assault three separate victims," and that as a result Petitioner was a more serious risk to the community. (Id.) The Parole Commission recommended Petitioner "become involved in the CODE Program, which will address substance abuse, Anger management, Victim Awareness, and other programs geared towards self-improvement." (Id.) The Parole Commission also recommended that Petitioner seek mental health counseling in order to "demonstrate [his] willingness to participate in ongoing sex offender treatment, thereby minimizing [his] threat to the community." (Id.)

The Parole Commission most recently denied Petitioner's release on March 14, 2008, and continued his case for a rehearing in February 2011. (Id. at 28.) The Parole Commission again determined that Petitioner was a more serious risk than indicated by his score under the 1987 D.C. Board of Parole guidelines due to the fact he is not a participant in "Sex Offender Treatment or Counseling Program." (Id.) The written decision added that Petitioner continued to be a risk to commit similar offenses in that his "treatment needs" had yet to be addressed.

(Id.)  The Parole Commission recommended that Petitioner "participate in the CODE Program and any other Mental Health Programs available in the psychological department."[5]  (Id.)

**Discussion**

Through the instant § 2241 action, Petitioner challenges the Parole Commission's decisions denying him parole, arguing that the Parole Commission violated the D.C. Board of Parole's regulations as well as his due process rights.  He contends that the Parole Commission abused its discretion and that there was no rational basis in the record for its several decisions denying him parole.  Petitioner, quoting language from the D.C. Code and the 1987 guidelines, argues that the Parole Commission lacked the discretion to deny him parole in light of his total point score calculation, which had indicated that parole should have been granted.  Petitioner additionally states that he participated in certain programming recommended by the Parole Commission, including CODE and Victim Impact.  Although he does not provide any documentation concerning the Victim Impact program, Petitioner has

---

[5] Petitioner has submitted a "Certificate of Achievement" for his successful completion of the "Orientation/Values Development" aspect of the CODE Program at USP-Lewisburg. (Dkt. Entry 1-2 at 52.)  The Bureau of Prison's Challenge, Opportunity, Discipline and Ethics (CODE) Program is intended "to teach inmates basic core values such as respect for self and others, responsibility for personal actions, honesty in relationships with others, and tolerance towards the actions of others."  Audit Div., Office of the Inspector Gen., U.S. Dep't of Justice, Audit Report 04-16, The Federal Bureau of Prisons Inmate Release Preparation and Transitional Reentry Programs at 14 (2004), available at http://www.justice.gov/oig//reports/BOP/a0416/final.pdf.  It is not clear that Petitioner successfully completed all aspects of the CODE Program.

-6-

submitted a number of certificates as attachments to his Petition that indicate his participation in several of the programs the Parole Commission recommended to Petitioner, including Breaking Barriers and CODE, as well as AA and anger management programming. (See id. at 45–48, 52.) Petitioner contends that parole cannot be denied for his failure to complete sex offender treatment or counseling programs that were not offered at U.S.P. Lewisburg. He also notes that the Bureau of Prisons "does not provide sex-offenders with psychological/psychiatric reports or evaluations or examinations."

In response to the Petition, Respondent argues that parole decisions made pursuant to the D.C. parole statute are not reviewable on the merits. Respondent cites the following provision of the D.C. parole statute, emphasizing the statute's discretionary language:

> Whenever it shall appear to the United States Parole Commission ("Commission") that there is reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he has served the minimum sentence . . . the Commission <u>may</u> authorize his release on parole.

D.C. Code § 24-404(a) (Respondent's emphasis). Respondent further submits that it is the well-settled law of the District of Columbia that parole decisions made pursuant to the D.C. parole statute are not reviewable on the merits, citing, inter alia, Stevens v. Quick, 678 A.2d 28 (D.C. 1996). Respondent argues that because Petitioner asks this Court to review the merits of the Parole Commission's denial of parole, the petition should be denied.

Respondent further argues that Petitioner's due process claim is meritless. Citing

Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1 (1979), Respondent submits that release on parole is not a constitutionally-protected liberty interest. Respondent further submits that it is settled law in D.C. that neither the D.C. parole statute nor the D.C. parole regulations create a liberty interest in parole release. Respondent argues that Petitioner's reliance on the appearance of the word "shall" in the D.C. parole regulations fails to create a due process right to parole release because the regulations provide, in addition to the language Petitioner cites, that "[t]he Board may, in unusual circumstances, waive the SFS [(salient factor score)] and the pre and post incarceration factors set forth in this chapter to grant or deny parole to a parole candidate," and that "[n]otwithstanding any other provision of this section, the Board may order a parole reconsideration date it determines to be appropriate." D.C. Mun. Regs. tit. 28, §§ 204.22, 104.11 (1987).

Petitioner's argument that the Parole Commission lacked the discretion to depart from the guidelines and deny him parole is unavailing. As Respondent notes, the D.C. Code and D.C. regulations establish that parole decisions are within the discretion of the Parole Commission. See D.C. Code § 24-404(a) (stating that when a prisoner meets certain criteria, "the Commission may authorize his release on parole") (emphasis added); D.C. Mun. Regs. tit. 28, § 200.1 ("In accordance with D.C. Code § 24-204 the Board shall be authorized to release a prisoner on parole in its discretion . . . .") (emphasis added); id. § 204.22 ("The Board may, in unusual circumstances, waive the SFS [(salient factor score)] and the pre and post

incarceration factors set forth in this chapter to grant or deny parole to a parole candidate."); id. § 104.11 ("Notwithstanding any other provision of this section, the Board may order a parole reconsideration date it determines to be appropriate."). Accordingly, the Parole Commission acted well within its authority in departing from the guidelines to deny Petitioner parole. Furthermore, because the statute or regulations "provide no substantive limitations on the Board's authority to grant parole," they do not create a liberty interest in parole release. See Price v. Barry, 53 F.3d 369, 370–71 (D.C. Cir. 1995); McRae v. Hyman, 667 A.2d 1356, 1357 (D.C. 1996) (holding that the District's parole scheme confers discretion to grant or deny parole, and the scoring system creates no liberty interest overriding the exercise of that discretion).

The absence of an entitlement to release based solely upon an offender's point score under the applicable regulations, however, does not give license to arbitrary or irrational decision-making by parole authorities. Our Court of Appeals has concluded that the Parole Commission's decisions are subject to limited judicial review to ascertain whether a rational basis for the adverse decision is articulated in the Parole Commission's statement of reasons. See, e.g., Furnari v. Warden, Allenwood Fed. Corr. Inst., 218 F.3d 250, 254 (3d Cir. 2000).[6] As recognized by our Court of Appeals in the context of a parole case thirty years ago, "[a]

---

[6] Although Furnari did not involve a D.C. offender, it is noteworthy that the discretion accorded the Parole Commission to review parole for D.C. offenders is similar to the discretion afforded the Parole Commission for federal offenders. Compare 28 C.F.R. § 2.73 with 28 C.F.R. § 2.18.

legislative grant of discretion does not amount to a license for arbitrary behavior." Block v. Potter, 631 F.2d 233, 236 (3d Cir.1980) (citations omitted). "[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." Foucha v. Louisiana, 504 U.S. 71, 80 (1992) (internal quotation marks omitted).

Petitioner, challenging the Parole Commission's stated bases for repeatedly denying him parole, contends that the Parole Commission's decisions were arbitrary and capricious. Petitioner argues that it is irrational to deny parole because Petitioner has not participated in sex offender programming or counseling when the Parole Commission "knew or should have known" that such programming or counseling was note offered at the institution to which he had been assigned. He also emphasizes the Parole Commission ignored his participation in certain programming that the Parole Commission recommended he complete prior to further consideration of his parole suitability. With respect to the Parole Commission's requests of the Bureau of Prisons for psychological evaluations of Petitioner, Petitioner asserts that the Parole Commission "knew or should have known" the Bureau of Prisons "does not provide sex-offenders with psychological/psychiatric reports or evaluations or examinations."

As noted above, the scope of review here is limited to ascertaining whether there is rational basis in the record for the Parole Commission's conclusions embodied in its statement of reasons. Furnari, 218 F.3d at 254 (citing Zannino v. Arnold, 531 F.2d 687, 681 (3d Cir.

1976)). The court should determine whether the Parole Commission "has followed criteria appropriate, rational and consistent" with its enabling statutes so that its "decision is not arbitrary and capricious, nor based on impermissible considerations." Id. (citing Zannino, 531 F.2d at 690) (internal quotation marks omitted). "To this end, the Commission may not base its judgment as to parole on an inaccurate factual predicate." Id. (citing Zannino, 531 F.2d at 690) (internal quotation marks omitted).

In this case, a careful examination of each of the Parole Commission's decisions reveals a rational basis, rooted in the record, for the conclusion that parole should not be granted. In the November 28, 2000 Notice of Action, the Parole Commission stated that Petitioner was a more serious risk than indicated by his point score in light of the "aggravated nature" of his offense "in that [Petitioner] repeatedly raped and sodomized [his] victim." (See Dkt. Entry 1-2 at 22.) In the July 9, 2001 Notice of Action, the Parole Commission again determined Petitioner to be a more serious risk than indicated by his point score due to his "predatory criminal behavior in which [he] raped and sodomized [his] victim at knifepoint, after stalking her on the city streets." (Id. at 23.) The Parole Commission also noted that Petitioner had admitted to the D.C. Board of Parole in 1998 that he had sexually assaulted two other individuals and then denied all three assaults. (Id.) In the June 3, 2002 Notice of Action, the Parole Commission again found Petitioner to be a more serious risk than indicated by [his] point score in that [he has] committed multiple rapes when last in the community;" "express[es] no remorse for [his] involvement in the

instant offenses;" " is a violent sex offender who puts the community at risk;" and "is highly likely if released to the community . . . [to] engage in similar crimes again." (Id. at 24.) In the April 30, 2004 Notice of Action, the Parole Commission once again found Petitioner to be a more serious risk than indicated by his score because "during the discussion of the instant offense, [he] admitted being convicted of the instant offense but could not remember the details of the instant offense because [he] had committed other rapes" and he has "shown no remorse for [his] involvement in these offenses." (Id. at 25.) The foregoing reasons, including the nature of Petitioner's offense, his lack of remorse, and his statements concerning other of his sexual offenses, constitute rational bases for the Parole Commission's decisions to deny Petitioner Parole, and, accordingly, Petitioner's challenges to those decisions are without merit.

The Parole Commission's more recent decisions present a closer call. In explaining its discretionary decision to deny parole in its May 3, 2005 Notice of Action, the Parole Commission stated:

> <u>Although you have admitted to committing the instant offense, and expressed remorse, you have not participated in sex offender treatment or counseling programs</u>. Thus, you have little insight into the facts that led you to sexually assault three separate victims. As a result you are a more serious risk to the community to commit similar offenses if released to parole at this time. During the interim you should become involved in the CODE Program, which will address substance abuse, Anger management, Victim Awareness, and other programs geared towards self-improvement. It is also recommended that you initiate ongoing mental health counseling with the Psychological Department to address other mental health needs as defined by staff. <u>Your participation in these programs will</u>

> demonstrate your willingness to participate in ongoing sex offender treatment, thereby minimizing your threat to the community.

(Dkt. Entry 1-2 at 27)(emphasis added).)

In the March 14, 2008 Notice of Action denying Petitioner parole, the Parole Commission stated:

> After consideration of all factors and information presented, a departure from the guidelines at this consideration is warranted because you are a more serious risk than indicated by your grid score in that you continue not to participate in Sex Offender Treatment or Counseling Program. You continue to be a risk to society to commit similar offense if released on parole at this time. You committed multiple sexual assaults against (3) separate victims and you have not addressed your treatment needs at this time. It is recommended that you participate in the CODE Program and any other Mental Health Programs available in the psychological department.

(Id. at 28.)

The May 3, 2005 and March 14, 2008 decisions to deny parole are clearly grounded in the Parole Commission's consideration of the nature of Petitioner's offense behavior and the fact that he has not participated in sex offender treatment or appropriate counseling programs. The Parole Commission clearly had a rational basis for assessing Petitioner's risk to the community in light of the fact that he had not completed appropriate sex offender or counseling programs. It has been recognized that such programs serve valid rehabilitative purposes. See, e.g., McKune v. Lile, 536 U.S. 24, 48 (2002) (Kansas sex offender treatment program "represents a sensible approach to reducing the serious danger that repeat sex offenders

-13-

pose."); cf. Ainsworth v. Stanley, 317 F.3d 1 (1st Cir. 2002) (state could deny parole to inmates who failed to complete sex offender program even though participation in program required inmates to admit their criminal conduct); Thorpe v. Grillo, 80 F. App'x 215, 219 (3d Cir. 2003) (same). Accordingly, failure to complete a sex offender program is one of many factors parole authorities may take into consideration in refusing to release an inmate, as successful completion of such a program bears rationally on an inmate's likely rehabilitation. See, e.g., Pleaze v. Klem, 335 F. App'x 168, 171 (3d Cir. 2009); Maher v. Lawler, Civil No. 3:CV-08-0411, 2010 WL 2542228, at *3 (M.D. Pa. June 23, 2010) (denial of parole for failure to complete sex offender treatment program was well within parole board's considerable discretion even though petitioner was not convicted of a sexual offense).

The fact that a sex offender treatment program was unavailable at USP-Lewisburg does not preclude the Parole Commission from taking into consideration the fact that Petitioner had not completed such a program. The Parole Commission has neither the authority nor the obligation to assure that programs designed to improve the prospect of successful rehabilitation, and consequently safeguard the community, are provided by corrections authorities. It is the Parole Commission's responsibility to assess the risk posed by a parole applicant, and completion of an appropriate treatment program is rationally related to the assessment of that risk, regardless of the availability of appropriate programming where the inmate is housed. In this case, the Parole Commission was careful to note that its decision was

based upon the undisputed fact that Petitioner had not participated in "Sex Offender Treatment or Counseling Program." The Parole Commission did not state that it was denying parole because Petitioner refused to participate in such programming. It ascribed no fault to Petitioner in this regard. But the undeniable fact that such treatment was not received by Petitioner afforded the Parole Commission a rational basis for concluding that he posed an unacceptable risk to the community.[7]

Accordingly, Petitioner's challenge to the adverse parole decisions must be denied. An

---

[7] According to the 2008 U.S. Department of Justice Legal Resource Guide to the Federal Bureau of Prisons, the Bureau of Prisons has established a Sex Offender Management Program at USP-Tucson, the prison to which Petitioner was transferred after this action was brought. Fed. Bureau of Prisons, U.S. Dep't of Justice, Legal Resource Guide to the Federal Bureau of Prisons 28–29 (2008), available at http://www.bop.gov/news/PDFs/legal_guide.pdf. It thus appears that Petitioner is at a facility where appropriate treatment is provided. If he successfully completes such programming the Parole Commission will not be able to rely upon this factor in assessing his parole suitability.

appropriate Order follows.[8]

          **s/ Thomas I. Vanaskie**_____
          Thomas I. Vanaskie
          United States Circuit Judge
          Sitting by Designation on the District Court

---

[8] Because Petitioner is in custody pursuant to a judgment of the District of Columbia Superior Court, he is regarded as a state prisoner for purposes of habeas corpus relief. See Madley v. U.S. Parole Comm'n, 278 F.3d 1306, 1309 (D.C. Cir. 2002); Keitt v. U.S. Parole Comm'n, 238 F. App'x. 755, 758 (3d Cir. 2007). Accordingly, any appeal from the denial of his habeas petition is subject to the certificate of appealability requirements of 28 U.S.C. § 2253(c)(1)(A). In order to obtain the requisite certificate, Petitioner must make a substantial showing of a denial of a constitutional right. See 28 U.S.C. § 2253(c)(2). "To show such a denial, [Petitioner] must demonstrate that reasonable jurists could disagree about whether the district court's resolution of his claims was correct." Keitt, 238 F. App'x. at 758 n.5. Because jurists of reason could not disagree with this Court's conclusion that there was a rational basis for the denial of parole, a certificate of appealability will not be issued.

-16-

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH TURNAGE, | : | |
| | : | |
| Petitioner, | : | CIVIL NO. 3:CV-08-1662 |
| | : | |
| v. | : | |
| | : | |
| | : | (Judge Vanaskie) |
| WARDEN B. A. BLEDSOE, | : | |
| | : | |
| Respondent. | : | |

## ORDER

**NOW, THIS 9th DAY OF SEPTEMBER, 2010,** in accordance with the accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The petition for a writ of habeas corpus is **DENIED**.

2. The Clerk of Court is directed to mark this matter **CLOSED**.

3. A certificate of appealability is **DENIED.**

                                          **s/ Thomas I. Vanaskie**_____
                                          Thomas I. Vanaskie
                                          United States Circuit Judge
                                          Sitting by Designation on the District Court